## BEAVERS v. CONSOLIDATED OIL CO. OF TEXAS.

### No. 3383.

Court of Civil Appeals of Texas. Amarillo.
March 26, 1930.

Rehearing Denied May 7, 1930.

Luther Hoffman, of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

JACKSON, J.

This suit was instituted in the district court of Wichita county, Tex., by C. E. Beavers against C. W. Whitehead and the Consolidated Oil Company of Texas, a corporation.

The plaintiff alleged: That on July 19, 1926, the defendant C. W. Whitehead, for money had and received, promised and agreed to pay him $5,000 within thirty days from said date, but that said defendant had refused to pay plaintiff said money or any part thereof. That on or about the same date the defendant Consolidated Oil Company became indebted to C. W. Whitehead in the sum of $5,000, which it promised and agreed to pay him. That C. W. Whitehead gave plaintiff an order drawn on the Consolidated Oil Company, directing it to pay plaintiff the sum of $5,-000. That the company accepted the order and promised to pay plaintiff the amount thereof when it became due to C. W. Whitehead. That said debt and obligation of both defendants is long since past due. That the order for $5,000, given to plaintiff by Whitehead and directed to the Consolidated Oil Company, constituted an assignment of $5,-000 in the hands of said company, and the assignment was accepted with full knowledge of the contents thereof, but said company has refused to pay said amount or any part thereof.

The defendant C. W. Whitehead made no defense to the plaintiff's suit.

The Consolidated Oil Company answered by general demurrer and general denial, and specially denied that it was indebted to plaintiff or that it had ever accepted any order given by Whitehead to plaintiff.

Said defendant also alleged: That on July 17, 1926, it entered into a written contract with C. W. Whitehead, by the terms of which he agreed to convey or cause to be conveyed to it, with good and merchantable title thereto, the oil and gas in certain tracts of land, particularly described, aggregating 3,000 acres, situated in Wise and Montague counties. That C. W. Whitehead also agreed, at his own cost and expense, to furnish all labor and material and drill a well on some part of said acreage, the location to be selected by this defendant, to a depth of 2500 feet. unless oil or gas in paying quantities was found at a lesser depth. That actual drilling operations were to be commenced within 15

days from the date of the contract, and prosecuted with due diligence until the well was completed. That the lease contracts or assignments, conveying title to this defendant, were to be delivered to it by C. W. Whitehead upon the spudding in of said well. That Whitehead was to furnish this defendant, within not·exceeding 15 days from the date of the contract, complete abstracts of title to said land, showing good and merchantable title in the parties executing such leases or assignments. That, in consideration of the oil and gas rights to be conveyed and the drilling of the well according to contract, this defendant agreed to pay C. W. Whitehead the sum of $15,000, as follows: The sum of $5,000 when the well was spudded in according to contract; the sum of $5,000 when the well had reached a depth of 1,500 feet; and the sum of $5,000 when the well was completed. That said sum of $15,000, 'or so much thereof as was necessary, was to be expended by C. W. Whitehead in the drilling and completion of said well.

This defendant further alleged: That Whitehead breached his contract before the well was spudded in, refused to furnish and pay for the equipment and labor with which to begin the operation of drilling. That he failed to furnish the conveyances of oil and gas in the land, as he agreed, and ·failed to furnish the abstracts of title showing merchantable title. That the $5,000 which plaintiff asserts was assigned to him never became due and payable to C. W. Whitehead. That he never became the owner of or entitled to receive said sum of money. That he never complied with the·contract, and no part of the $15,000 was ever earned by him or became due him from this defendant. That, because of the breach of the contract by C. W. Whitehead, this defendant was compelled to pay for the equipment and labor that had been used on the well up to the time it was spudded in, to prevent liens from being fixed on such machinery and leasehold estate. That the plaintiff knew at the time of the acquisition by him of the alleged assignment of the $5,000 of the terms and conditions of the contract between this defendant and C. W. Whitehead, and knew that C. W. Whitehead had neither spudded in said well nor delivered to this defendant the instruments conveying title to the lands, and that said sum of money was not due, and hence the plaintiff was not a purchaser in good faith for value. That, because of the failure and refusal of C. W. Whitehead to perform the terms and conditions of his contract in delivering leases and assignments to the acreage, and his failure to spud in ·and drill the well, this defendant was forced to take over the drilling of said well, pay the cost and expense of the completion thereof, so as to hold title to the acre-.age, for which reasons the plaintiff is not entitled to recover against this defendant.

The case was tried to a jury, but at the conclusion of the evidence the court directed a verdict in favor of the Consolidated Oil Company against the plaintiff and in favor of the plaintiff against C. W. Whitehead, and, on the verdict returned in obedience to such instruction, judgment was rendered that the plaintiff take nothing against the Consolidated Oil Company, but that he have and recover of C. W. Whitehead $5,000, with interest from July 22, 1926.

The plaintiff prosecutes this _appeal from the judgment, denying him a recovery against the Consolidated Oil Company.

The appellant assails as error the action of the trial court in peremptorily instructing the jury to return a verdict in favor of appellee, the Consolidated Oil Company, against him, because the pleadings and the evidence present issues of fact which should have been submitted to the jury.

The order upon which the appellant bases his right to recover, is in the form of a letter, and reads as follows:

"July 19th, 1926.

"Montague—Wise Co. Block.

"Mr. C. W. Whitehead, City.

"Dear Sir: Referring to contract between · yourself and this company, dated July 17th, covering the drilling of a cable-tool test in Wise County, Texas:

"It is mutually agreed that you may proceed with the spudding in of this well ~~upon delivery to us of assignments covering the 8,000 acres~~ (where lines appear on original these words are crossed out with ink), and that we will pay you the sum of $5,000.00 when you spud, providing assignments have been delivered, regardless of the fact that titles have not as yet been approved as good and merchantable as stipulated in contract above mentioned, and that in the event it should develop that the title to any of the land covered by said contract is defective in the opinion of our attorney, you are, at the request of this company, to shut well down until such defects have been cured.

"The foregoing does not in any wise affect the other provisions in contract above mentioned contained."

The letter was executed by W. T. Knight, president of the Consolidated Oil Company, accepted by C. W. Whitehead, and below the signatures this language is written in ink:

"Please pay the above $5000.00 to C. E. Beavers, and oblige,

"C. W. Whitehead."

The contract between appellee and C. W. Whitehead imposes upon Whitehead the duty and obligation of spudding in the well in fifteen days from July 17th, the date of the contract, and, upon spudding in the well, to deliver to appellee leases and assignments to the tracts of land ·particularly described, and to

furnish appellee, for examination, abstracts of title to said land, showing good and merchantable title in the parties executing such leases and assignments, and, also to furnish, at his own cost and expense, all equipment, material, and labor for spudding in and completing said well.

The consideration to be paid by appellee was the sum of $5,000 when the well was spudded in according to contract, $5,000 when the well reached a depth of 1,500 feet, and $5,000 when the well was completed.

The original contract was modified by the letter or order, purchased by appellant, to the extent only of allowing Whitehead to spud in the well, deliver the assignments to appellee, and collect the $5,000, regardless of whether the titles had, at that time, been approved as good and merchantable or not.

The appellant testified: That while he was negotiating for the purchase of the order he knew that Mr. Whitehead had contracted to drill the well for appellee, and before he paid for the order he went to appellee's office and inquired for Mr. Knight, who was not present. That he talked with Mr. Matthews, who was in the office, and explained that he wanted to find out if the letter had been delivered to Whitehead, and what the chances were that the order would not be paid. That Mr. Matthews advised him that everything was all right, the leases were in the bank in escrow, the well had not been spudded in, but would be in a few days. That he did not know what position Mr. Matthews held with appellee, but he was told by him and also by Mr. Whitehead that the leases and assignments had not been actually delivered to appellee nor the well spudded in. That he asked for an acceptance of the order, and Mr. Matthews started to write out one for him, but then declined to do so, but told appellant to wait and see Mr. Knight. That he never saw Mr. Knight before he paid for the order. That, after the well was spudded in, he did see Mr. Knight for the first time, and was told that appellee would not recognize the order, as Mr. Whitehead had breached his contract.

The testimony shows without controversy: That the leases and assignments to the acreage appellee was to get were in escrow in the bank. That they were withdrawn from the bank by Mr. Paul Donald, who was assisting in getting up the block of leases, for the purpose of checking the field notes. That the leases and assignments were kept by Mr. Donald, who refused to deliver them to Mr. Whitehead or appellee until he was paid certain bills that had been incurred in the preparation for drilling the well. That Mr. Whitehead was not entitled to the leases and assignments until such bills were paid. That Mr. Whitehead never paid any of such bills, but about August 31, 1926, the appellee paid such bills, amounting to $1,350, and the leases

and assignments were delivered, but did not cover the acreage described in the contract, and substitutions were made for the acreage not delivered and leases to the substituted acreage delivered about the time the well was down 2,500 feet. That the well was spudded in by Whitehead on August 10, 1926, and drilled to a depth of 415 feet, but that he was unable and failed to pay the cost and expense incurred in drilling to said depth, and abandoned his contract and the drilling of the well and left. That on September 1 appellee was compelled to pay the bills incurred for drilling to the depth of 415 feet and take over and complete the drilling of the well, which was done at an expense of something over $27,000. That Mr. Whitehead was without financial means, and that none of the money obtained by him from appellant was expended in the preparation for spudding in or drilling said well.

■ The letter or order purchased and paid for by the appellant, and which is the foundation of his suit, is a nonnegotiable instrument, but is assignable. R. C. S. arts. 569, 570. The instrument being nonnegotiable, the appellant acquired no other or higher right therein than his assignor. Joyce, Defenses to Commercial Paper, vol. 1, p. 659; Norton v. W. L. Macatee & Sons (Tex. Com. App.) 16 S.W.(2d) 517.

■ The written contract between appellee and C. W. Whitehead, by the terms of which their respective duties and obligations were fixed, gave assurance with reasonable certainty that the installments therein provided for would accrue and a fund thereby be brought into actual existence, and therefore the obligation had a potential existence; however, the ultimate liability of the appellee depended upon the performance of the contract by C. W. Whitehead. Campbell et al. v. J. E. Grant Co. et al., 36 Tex. Civ. App. 641, 82 S. W. 794.

"It is true that a debt having a potential existence may be the subject of an assignment, still such assignment is ineffectual in so far as the potential debtor is concerned until such potential debt becomes an actual debt." Alfalfa Lbr. Co. v. City of Brady [Tex. Civ. App.] 149 S. W. 204, 205.

■ The testimony, in our opinion, is conclusive that Mr. Matthews, who was in appellee's office and with whom appellant conferred before purchasing the letter or order, did not accept the order for his company, and that he did not have the authority to do so, but the acceptance of the order, if the potential debt had become an actual debt, was not necessary to have bound the appellee to the payment of such order. Beaumont Lbr. Co. v. Moore (Tex. Civ. App.) 41 S. W. 180. However, if the order had been accepted, it did not constitute an unconditional promise to

pay the appellant the amount named therein. Norton v. W. L. Macatee & Sons, supra.

The appellant admits that he knew of the contract between the appellee and Whitehead for the drilling of the well, before he acquired the order, and the order upon its face advised him that a contract had been made and that the $5,000 would be paid when the well was spudded in and the leases and assignments to the acreage described in the contract delivered to appellee.

Under this record, C. W. Whitehead did not spud in the well according to contract, and never did deliver, or cause to be delivered, assignments to the acreage described in the contract. Appellee never acquired title to the acreage specified in the contract, but obtained conveyances to acreage, which it accepted, but the assignments to the substituted acreage were not delivered by Whitehead and not delivered by any one until long after Whitehead had left, surrendered the well, breached his contract, and abandoned further efforts to comply therewith.

Mr. Whitehead was at no time in a position to have demanded and received from appellee the $5,000 which appellant seeks to recover, and, since C. W. Whitehead's right to the money depended upon his performance of his contract and appellant acquired no better right than his assignor, the court correctly directed a verdict against him.

The judgment is affirmed.

HALL, C. J., not sitting.