**Clifford G. BUTLER, Jr. and
Kathryn Butler**

v.

**SUN REFINING AND
MARKETING COMPANY.**

Civ. No. Y–86–2895.

United States District Court,
D. Maryland.

April 29, 1987.

Barry J. Rosenthal, Rockville, Md., for plaintiffs.

Richard H. Wyron, Bethesda, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Clifford G. Butler, Jr. and Kathryn Butler have sued Sun Refining and Marketing Company ("Sun"), alleging that Sun violated the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.*, the Gasohol and Gasoline Products Marketing Act, Md. Com. Law Code Ann. § 11–301 *et seq.*, and Maryland common law. Defendant's motion to dismiss or, in the alternative, for summary judgment is ripe for resolution.

## I. FACTS

The Butlers entered into a dealer franchise agreement with Sun on March 29, 1983 to operate a Sunoco service station located in Rockville, Maryland. Plaintiffs operated the service station until March 1985, when they agreed to convey their interest in the station to Julian and Carolyn Van Bellinghen. Pursuant to the terms of their franchise agreement with Sun,[1] the Butlers presented Sun with a copy of the sales contract between plaintiffs and the Van Bellinghens. Paragraph 18 of that contract stated that in the event the Van Bellinghens defaulted on their payments to the Butlers, the Van Bellinghens would reassign any and all franchise interests back to the Butlers.

Sun required the Butlers to execute a mutual cancellation agreement before allowing the assignment of the franchise to the Van Bellinghens. On May 2, 1985, Clifford Butler signed the agreement, which stated that he and Kathryn Butler, as franchisees, and Sun, as franchisor, mutually agreed to terminate the franchise effective April 30, 1985. Sun entered into a dealer franchise agreement with the Van Bellinghens the same day.

In September 1985, the Van Bellinghens defaulted on their payments to the Butlers and, in accordance with the sales contract, formally reassigned their franchise interest back to plaintiffs. Sun was notified of the reassignment, but it refused to recognize plaintiffs as franchisees. Plaintiffs, believing they had a right to the reassignment of the station, sought to transfer it to the Leighs, who were prior station operators. When Sun refused to sanction this transfer, plaintiffs attempted to convey their interest to the Lawhornes. Sun agreed to consider the Lawhornes, but it rejected them as suitable tenants and placed other tenant operators into the service station. Plaintiffs were notified of these arrangements on November 4, 1985.

Plaintiffs filed suit against Sun on September 19, 1986. Count I of their complaint alleges that Sun improperly terminated the franchise in violation of the Petroleum Marketing Practices Act; Count II alleges that Sun unreasonably withheld its consent to assignment and reassignment of the franchise in violation of the Maryland Gasohol and Gasoline Products Marketing Act; and Count III sets forth claims for breach of contract. Plaintiffs seek compensatory damages of $185,000, which allegedly would have been realized from the sale, plus punitive damages and attorney's fees. Defendant moved to dismiss the complaint for failure to state a claim or, in the alternative, for summary judgment. Matters outside the pleadings have been presented to and considered by this Court, therefore defendant's motion will be treated as one for summary judgment. Fed.R. Civ.P. 12(b).

## II. TERMINATION OF THE FRANCHISE

The Petroleum Marketing Practices Act ("PMPA") establishes the permissible grounds for terminating a petroleum marketing franchise as well as the notice which a franchisor must provide prior to termi-

---

**1.** Paragraph 19(a)(2) of the Dealer Franchise Agreement, attached as Exhibit A to the Zulli Affidavit in support of defendant's motion, re-quires the franchisee to give Sun at least sixty days' notice of any sale, including a description of the terms and conditions of the sale.

nation.[2] 15 U.S.C. §§ 2802–2804. If a franchisor fails to comply with the Act's requirements, the franchisee may bring a civil action against such franchisor "within 1 year after the later of (1) the date of termination of the franchise ...; or (2) the date the franchisor fails to comply with the requirements of section 2802 or 2803...." 15 U.S.C. § 2805(a). The PMPA preempts conflicting state law regarding the termination of any franchise, including the notification that must be furnished. 15 U.S.C. § 2806(a).

Defendant argues that this suit was brought more than one year after plaintiffs' franchise was terminated, thus the statute of limitations bars any claim for wrongful termination. Plaintiffs contend that the mutual cancellation agreement ("MCA") dated May 2, 1985 is wholly lacking in validity and did not serve as a termination of the franchise. In support of their position, plaintiffs argue that (1) Sun impliedly consented to their reservation of rights in the franchise because Sun was aware of the reassignment provision in the sales contract between plaintiffs and the Van Bellinghens; (2) the MCA has no effect because neither Kathryn Butler nor the corporation known as Butler Automotive Services, Inc., which operated the service station, signed the cancellation agreement; and (3) Sun failed to provide the 90-day notice of termination required by 15 U.S.C. § 2804.

■ This Court need not evaluate the merits of plaintiffs' arguments because the time has come and gone to litigate the validity of the franchise termination. The cancellation agreement which Clifford Butler signed on May 2, 1985 stated that effective April 30, 1985, "All prior contracts and understandings of any kind between the parties covering the franchise relationship are terminated and nonrenewed as of the above effective date and both parties are fully released from all such prior contracts and understandings...." *See* Exhibit B to the Zulli Affidavit. Even though plaintiffs argue they were unaware at that time that the MCA terminated all their rights in the franchise, a letter to their counsel dated August 23, 1985 made the termination crystal clear:

> On May 2, 1985 your clients, the Butler's [sic], entered into a mutual cancellation agreement with Sun ... whereby all contracts and relationships were terminated and whereby both parties mutually released one another from all prior obligations except for unpaid accounts. At that time your clients ceased to have any relationship with Sun.
>
> To the extent your clients entered into any arrangement with the Van Bellinghen's [sic], it can not result in any reconveyance of the leasehold as the Butler's [sic] rights relative to Sun were extinguished on May 2, 1985. Sun entered into a new lease with the Van Bellinghen's [sic] and regards that lease as the only one in full force and effect.
>
> Accordingly, Sun does not have any intention of reinstating the Butler's [sic] at this location.

*See* Exhibit E to the Zulli Affidavit.

By August 23, 1985, at the latest, plaintiffs were fully aware that their franchise had been terminated. Yet they did not file suit until September 19, 1986. Any claim they have regarding the validity of their franchise termination is consequently barred by the one-year statute of limitations. 15 U.S.C. § 2805(a). As there are no disputed issues of material fact, and defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment is granted as to Count I of plaintiffs' complaint. Fed.R.Civ.P. 56(c).

## III. ASSIGNMENT OF THE FRANCHISE

State law, rather than the PMPA, governs the assignability of motor fuel marketing franchises. 15 U.S.C. § 2806(b). To the extent that plaintiffs' claims involve

---

**2.** The PMPA defines a "franchise" in terms of three elements: a contract to use the refiner's trademark, a contract for the supply of motor fuel to be sold under the trademark, and a lease of the premises at which the motor fuel is sold. 15 U.S.C. § 2801(1); *Barnes v. Gulf Oil Corp.*, 795 F.2d 358, 360 (4th Cir.1986).

defendant's refusal to allow plaintiffs to assign and/or be assigned franchise rights, this Court must look to Maryland law. 3 M.L.E. Assignments § 3 (1978); *Scott v. First Nat'l Bank,* 224 Md. 462, 465, 168 A.2d 349 (1961) (generally the law of the place where an assignment is made governs).

▮ The Maryland Gasohol and Gasoline Products Marketing Act provides that a distributor may not unreasonably withhold his consent to any assignment, transfer, or sale of a marketing agreement. Md. Com.Law Code Ann. § 11–304(g). Plaintiffs allege in Count II of their complaint that Sun unreasonably withheld its consent to the assignment of the franchise from the Van Bellinghens to the plaintiffs, in violation of § 11–304(g). Defendant has offered no facts to prove that its refusal was reasonable, thus it would be improper to grant summary judgment as to this claim.[3]

▮ Plaintiffs allege in Count III that defendant's refusal to accept them as franchisees following the reassignment from the Van Bellinghens was neither made in good faith nor based on reasonable and objective business practices as required by Paragraph 19(a)(3) of their franchise agreement. Thus, plaintiffs assert, defendant breached the contract. At the time of the reassignment, however, Sun had terminated its franchise agreement with plaintiffs and executed a similar agreement with the Van Bellinghens. There existed no franchise agreement between plaintiffs and Sun at that time, thus Sun could not have breached it.

▮ As an alternative claim, the Butlers contend the reassignment provision in their sales contract with the Van Bellinghens made them third-party beneficiaries of the franchise agreement between Sun and the Van Bellinghens. Sun's allegedly unreasonable refusal to approve the reassignment to plaintiffs violated Paragraph 19(a)(3) of the contract between Sun and the Van Bellinghens, and thereby damaged plaintiffs. Sun has not addressed this claim with any particularity. It has neither established that plaintiffs were not third-party beneficiaries of the franchise agreement with the Van Bellinghens, nor has it shown that Sun's refusal to accept plaintiffs as franchisees was reasonable. Accordingly, this Court will not grant summary judgment as to Count III.

## IV. EQUITABLE ESTOPPEL

The Butlers argue that Sun should be estopped from relying on the mutual cancellation agreement as a complete defense to their allegations. "[T]he concept of estoppel means that if one party, by his conduct, misleads another into relying to his detriment on a non-existent state of affairs, that party will be barred from taking a position inconsistent with the circumstances upon which the other party relied." *Borg-Warner Acceptance Corp. v. Rossi,* 365 F.Supp. 56, 60 (D.Md.1972), *aff'd,* 485 F.2d 1388 (4th Cir.1973). Plaintiffs submit that they informed Sun of the reassignment provision in their contract with the Van Bellinghens, and relied on instructions from Sun that in order to proceed with the conditional transfer of the station, they would have to sign a mutual cancellation agreement. Plaintiffs contend that by its conduct, Sun impliedly agreed to the reassignment provision, plaintiffs relied upon this, and consequently changed their position to their detriment.

▮ Defendant asserts that it did not explicitly condone the reassignment provision, and that mere silence does not give rise to an estoppel. While the latter is generally true, "when the circumstances known to one person impose upon him the duty to speak in order to prevent another from sustaining injury, the silence of that person will preclude him from asserting any defense to the claims of the injured

---

**3.** Plaintiffs also allege in Count II that the mutual cancellation agreement dated May 2, 1985 was unenforceable because it did not satisfy the notice requirements of § 11–305(1) of the Maryland Act. The PMPA preempts state law regarding termination notice requirements, therefore plaintiffs' claim has no merit. 15 U.S.C. § 2806(a); *Huth v. B.P. Oil, Inc.,* 555 F.Supp. 191, 193 (D.Md.1983) (Congress specifically intended to preempt conflicting state laws dealing with the termination of a franchise relationship).

party." *Borg-Warner, supra,* 365 F.Supp. at 61. Whether defendant had a duty to tell plaintiffs that they would not be able to retake the station as a result of signing the mutual cancellation agreement is a material fact in dispute. Accordingly, this Court will await trial to determine the validity of plaintiffs' estoppel argument.

For the foregoing reasons, defendant's motion for summary judgment is hereby granted in part and denied in part.